

**NUMBER 13-05-624-CR**

**COURT OF APPEALS**

**THIRTEENTH DISTRICT OF TEXAS**

**CORPUS CHRISTI - EDINBURG**

**HERMINIA OZUNA,**                                    **Appellant,**

**v.**

**THE STATE OF TEXAS,**                               **Appellee.**

**On appeal from the 214th District Court of Nueces County, Texas.**

**MEMORANDUM OPINION**

**Before Justices Yañez, Rodriguez, and Vela**
**Memorandum Opinion by Justice Yañez**

Appellant, Herminia ("Alicia") Ozuna, pleaded guilty to solicitation to commit capital

murder.[1]  A jury assessed her punishment at fifty years' imprisonment and a $10,000 fine. By ten issues, appellant contends (1) the trial court erred in failing to *sua sponte* grant her a mistrial; (2) her guilty plea was not knowingly and voluntarily made, as it was based on her counsel's erroneous representations; (3) the evidence established the defense of entrapment, and the jury charge should have included an entrapment question; (4) the evidence established the affirmative defense of renunciation, and the jury charge should have included a question on that defense; (5) her counsel was ineffective in failing to move for a mistrial at various points in the proceedings; (6) the trial court erred in permitting evidence of extraneous offenses; (7) her counsel was ineffective in failing to call two witnesses; (8) her sentence is "unjust"; (9) the trial court erred in failing to grant her motion for mistrial at the conclusion of the punishment evidence; and (10) the trial court abused its discretion in denying her motion for new trial.  We affirm.

## Background

Appellant and a co-defendant, Samuel Espinoza, were charged in the same indictment with solicitation to commit capital murder.   Both originally pleaded "not guilty," and proceeded to trial before a jury.  Shortly after the indictment was read, appellant surprised her counsel by pleading guilty.[2]

Arnoldo Campos, a confidential informant, testified that he met with appellant and her father, Augustine Perez, to discuss a potential drug deal.  Campos  negotiated  to

---

[1] *See* TEX. PENAL CODE ANN. §§ 15.03(a), (d)(1) (Vernon 2003), 19.03(a)(3) (Vernon Supp. 2007).

[2] The trial court severed Samuel Espinoza's case from appellant's case, and his case was tried to a jury.
Espinoza appeals in appellate cause number 13-06-116-CR.

2

purchase thirty kilos of cocaine from appellant. Appellant introduced Campos to Samuel Espinoza, her boyfriend and co-defendant. Espinoza said he could "help out" in finding the cocaine for sale. Appellant and Espinoza were acting as "brokers" for the drug deal. Campos testified that appellant was going to make a profit of approximately $15,000 from the proposed drug sale.

Campos testified that at a meeting with Perez, Perez said he was "fed up" with his son-in-law and was willing to pay to get rid of him. Later, at a meeting between appellant, Campos, and Perez, appellant told Campos that she wanted to find someone to kill her common-law husband, Federico Hernandez. Shortly thereafter, Campos tape-recorded one of his conversations with appellant, in which they discussed the drug deal and appellant's desire to have her husband killed. Campos told appellant it would cost about $5,000 to hire someone to kill her husband, and she agreed to pay that amount.

Campos met with appellant and Espinoza at a ranch to discuss the details of the drug deal. Campos told appellant he had found a "hit man" to kill her husband. Campos testified that Texas Ranger Roberto Garza was advising him as to how to set up a meeting between appellant and an undercover agent portraying a prospective "hit man." Pursuant to Garza's instructions, Campos told appellant to meet the "hit man" at a specific room at a motel in Corpus Christi, and appellant agreed. Campos further instructed appellant to bring $2,500 with her as half-payment for the "hit." Espinoza was present during this discussion. Campos contacted Garza to let him know that the meeting with the "hit man" had been arranged. Campos testified that appellant called him the day after the meeting with the "hit man" and told him everything was set.

3

John Lubbock, a retired officer with the narcotics unit of the Texas Department of Public Safety, testified that he agreed to work undercover as the "hit man" hired by appellant. Lubbock met appellant and Espinoza at the Corpus Christi motel room. Garza and local law enforcement officers had arranged to videotape the meeting in the motel room. The videotape was shown to the jury. Lubbock identified appellant as the person in the videotape with Espinoza. He testified that appellant gave him a picture of Hernandez (the intended victim), a note with Hernandez's address on it, and forty dollars as down payment for the murder. Appellant wanted Hernandez killed before May 6th because she had a court date concerning custody of their children. Appellant promised to bring the balance of the $5,000 in a couple of days.

Garza testified that he arranged to videotape the meeting and was in the adjacent hotel room during the meeting "ready to kick the door down" "in case something went wrong." A day or so later, Garza obtained warrants to arrest appellant and Espinoza. Garza testified that he read appellant her rights and took her voluntary statement.[3] Garza also took a voluntary statement from Espinoza.

### Failure to Grant Mistrial When Espinoza was Severed

In her first issue, appellant contends the trial court erred in failing to *sua sponte* declare a mistrial after her co-defendant was severed from the trial. Appellant argues that prior to the severance, she was was being "tried together" with a co-defendant, and was

---

[3] In her statement, appellant claimed that Campos told her he would pay the $5,000 for having her husband killed and that he gave her the $40 down payment. Appellant also stated she wanted to "call if off," but was unable to do so. At the punishment trial, appellant testified that Campos was paying for the "hit" and gave her the $40 down payment. She also testified that after meeting with the "hit man," she tried to call Campos to call off the hit, but was unable to reach him.

therefore subject to the statutory limitation of six peremptory challenges.[4]  According to

appellant, after the severance, she was entitled to a jury selected with the full number of

peremptory strikes available to her.  Appellant argues that the holding in *Goode v. State*

supports her position.[5]  In a sub-issue, appellant complains that her trial counsel was

ineffective in failing to move for a mistrial after the severance.

The State responds that appellant failed to preserve any issue for review because

her counsel failed to move for mistrial at the time of severance or otherwise complain about

the allocation of peremptory strikes.  The State also contends the present case is governed

by the Eastland Court of Appeals' opinion in *Williams v. State*[6] and is distinguishable from

*Goode.*  We agree with the State.

In *Goode*, both defendants urged pre-trial motions for severance, and introduced

evidence of their intent to pursue antagonistic defenses.[7]  Goode also argued that trial

under such circumstances would deprive her of peremptory challenges to which she was

entitled.[8]  The trial court denied the motions to sever, and the defendants were forced to

---

[4] *See* TEX. CODE CRIM. PROC. ANN. art. 35.15(b) (Vernon 2006).  Article 35.15(b) provides:

> In non-capital felony cases and in capital cases in which the State does not seek the death penalty, the State and defendant shall each be entitled to ten peremptory challenges.  If two or more defendants are tried together each defendant shall be entitled to six peremptory challenges and the State to six for each defendant.

*Id.*

[5] *Goode v. State*, 740 S.W.2d 453, 459 (Tex. Crim. App. 1987), *overruled on other grounds, Qualley v. State*, 206 S.W.3d 624 (Tex. Crim. App. 2006).

[6] *See Williams v. State*, 939 S.W.2d 703, 705 (Tex. App.–Eastland 1997, no pet.).

[7] *See Goode,* 740 S.W.2d at 455.

[8] *Id.*

5

have a joint trial.[9]  During trial, the judge found there was antagonism and "mutually exclusive defenses" between the defendants, granted Goode's co-defendant a severance, and continued Goode's trial, denying her motion for a mistrial.[10]  The court of criminal appeals reversed, concluding that because Goode was not "tried together" with a co-defendant under article 35.15(a), she was effectively denied the number of peremptory strikes due.[11]

We find *Goode* distinguishable for the same reasons found by the *Williams* court.[12] In *Williams*, the defendant filed a pre-trial motion to sever his case from that of his co-defendant, which the trial court denied.[13]  After the jury was selected, the trial court granted the State's motion for continuance as to the co-defendant, and he was severed from the case.[14]  Williams did not object at that time.[15]

After the trial began, Williams moved for a mistrial, contending he had been denied four peremptory strikes; he later specified four jurors that he would have exercised strikes

---

[9] *Id.*

[10] *Id.* at 456.

[11] *Id.* at 459.

[12] *See Williams*, 939 S.W.2d at 705.

[13] *Id.* at 704.

[14] *Id.* at 705.

[15] *Id.*

against.[16]  The trial court denied the mistrial.[17]

On appeal, the *Williams* court found *Goode* "factually distinguishable" because in *Williams*, the severance and mistrial were granted to effectuate a continuance: "Unlike *Goode*, the trial court did not find that appellant's and [his co-defendant's] defenses were antagonistic[,] thereby forcing appellant to take objectionable jurors."[18]  The *Williams* court further noted, "unlike *Goode*, appellant did not preserve error in the present case.  During voir dire, appellant did not request additional peremptory challenges or identify jurors struck by [his co-defendant] that he would have accepted."[19]  Noting that the number of peremptory strikes "is provided by statute," and "is not a fundamental constitutional right," the *Williams* court concluded that "the number of strikes should be determined at the time they are exercised."[20]  The court also noted that, "[t]o adopt appellant's application of *Goode* would require the trial court to grant a mistrial any time it grants a severance for any co[-]defendant after the jury has been selected."[21]

In the present case, as in *Williams*, (1) appellant failed to preserve error and (2) the severance was granted because of appellant's unexpected guilty plea; there was no finding

---

[16] *Id.*

[17] *Id.*

[18] *Id.*

[19] *Id.*

[20] *Id.*

[21] *Id.*  The State also argues that appellant 's last-minute decision to plead guilty should "estop her from complaining about the method of selecting the jury up until that point.  To hold otherwise would give the defendant a tool to manipulate the trial court into an automatic mistrial in spite of the fact that no apparent error occurred at the time of voir dire."

that appellant's and Espinoza's defenses were antagonistic.[22]  Accordingly, we hold that the trial court did not err in failing to *sua sponte* grant appellant a mistrial.[23]

We next address appellant's contention that her trial counsel was ineffective for failing to request a mistrial after the severance.  Appellant argues there is "no strategy possible" to explain counsel's failure to move for mistrial on the basis of "the peremptory challenge deprivation."  Appellant also argues that her counsel should have moved for a mistrial because she was prejudiced by pleading guilty in front of the jury.

*Strickland v. Washington*,[24] sets forth the standard of review for effectiveness of counsel.[25]  *Strickland* requires a two-part inquiry.[26]  The defendant must first show that counsel's performance was deficient, in that it fell below an objective standard of reasonableness.[27]  Second, the defendant must further prove there is a reasonable probability that but for counsel's deficient performance, the result of the proceeding would

---

[22] As noted, on appeal, appellant argues that she was "entrapped" by the actions of the law enforcement officers, and that she "renounced" any criminal objective.

[23] *See Rodriguez v. State*, 721 S.W.2d 504, 506 (Tex. App.–Houston [14th Dist.] 1986), *remanded on other grounds*, 759 S.W.2d 141 (Tex. Crim. App. 1988) (holding "if co-defendants are properly joined together for a trial, voir dire begins and concludes, and no specific harm is demonstrated by the statutorily authorized allocation of peremptory challenges, then a defendant who proceeds to trial with a jury struck by himself, his co-defendants and the State, regardless of whether his co-defendants proceed to trial with him, cannot complain of error").

[24] *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

[25] *See Ex parte Ellis*, 233 S.W.3d 324, 339 (Tex. Crim. App. 2007); *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999).

[26] *Thompson*, 9 S.W.3d at 812.

[27] *Id.*

have been different.[28]  A reasonable probability is a probability sufficient to undermine confidence in the outcome.[29]

The determination regarding whether a defendant received effective assistance of counsel must be made according to the facts of each case.[30]  An appellate court looks to the totality of the representation and the particular circumstances of the case in evaluating counsel's effectiveness.[31]

The appellant bears the burden of proving by a preponderance of the evidence that counsel was ineffective.[32]  There is a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance.[33]  To defeat the presumption of reasonable professional assistance, "any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness."[34]

Generally, the record on direct appeal will be insufficient to show that counsel's representation was so deficient as to meet the first part of the *Strickland* standard.[35]  We

---

[28] *Id.*

[29] *Id.*

[30] *Id.*

[31] *Id.*

[32] *Id.* at 813.

[33] *Id.*

[34] *McFarland v. State*, 928 S.W.2d 482, 500 (Tex. Crim. App. 1996).

[35] *Mitchell v. State*, 68 S.W.3d 640, 642 (Tex. Crim. App. 2002).

will not speculate to find trial counsel ineffective when the record is silent on counsel's reasoning or strategy.[36] In rare cases, however, the record can be sufficient to prove that counsel's performance was deficient, despite the absence of affirmative evidence of counsel's reasoning or strategy.[37]

Here, appellant filed a motion for new trial alleging numerous grounds, including ineffective assistance of counsel,[38] and the trial court held a hearing on appellant's motion.[39] At the hearing, appellant's trial counsel was questioned by her appellate counsel as to trial counsel's actions when appellant pleaded guilty.

> Q [Appellant's appellate counsel]: Now, there was also a great deal of discussion with Ms. Ozuna with respect to her plea of guilty in front of the jury. When did she tell you she was gonna do that?
>
> A [Appellant's trial counsel]: My understanding that—that is in the record. My recollection may not be the best, but from what I recall, it was during the time period when the jury was—in the interim between the time they were taking the oath and the time that she was asked how she would plead. So it was immediately before the time period right before the judge addressed her and asked how she was to plead, that in the matter of time, I would say, certainly within three to five minutes, tops.
>
> . . . .

---

[36] *See Robinson v. State*, 16 S.W.3d 808, 813 n.7 (Tex. Crim. App. 2000).

[37] *Id.*

[38] In the motion for new trial, appellant contends her trial counsel was ineffective for, among other things, failing to move for a mistrial when appellant pleaded guilty in front of the jury. Appellant does not allege her counsel was ineffective for failing to move for a mistrial after severance because she was deprived of peremptory strikes to which she was entitled.

[39] The State argues that because appellant failed to file an affidavit supporting her motion for new trial, the trial court was not authorized to conduct an evidentiary hearing. We are unpersuaded by the State's argument. *See Bitterman v. State*, 195 S.W.3d 777, 779 (Tex. App.–Waco 2006, pet. ref'd) (noting when a trial court grants a hearing on a motion for new trial, despite the absence of verification or supporting affidavits, their absence has no continuing significance and is not an appropriate basis for denying relief).

Q: Now, so she hands you this note and says she's gonna plead guilty. Did you approach the bench, ask to stop the proceedings so that she didn't do that in front of the jury that's sitting in the box?

A: It was my decision not to interrupt the proceedings.

Q: Okay. Have you seen the judgment that was entered in this case? Have you looked at the court's file?

A: Not since the trial.

Q: Okay. Well, the judgment in here says that before she made her plea, she was advised by the court, outside the presence of the jury, of all the things that are necessary, the elements of the offense, the range of punishment, you know, whether she had a right to appeal, if she wasn't a citizen, that she was gonna get deported, those sorts of things. Did you stop the proceedings to give Judge Longoria a chance to do that before she plead in front of the jury?

A: That—no, because she was not in a position to have—to avail herself of those very admonishments.

Q: Why—you couldn't approach the bench and ask him to just stop everything before she does something destructive in front of this jury?

A: In retrospect, that certainly was an option.

On cross-examination, appellant's trial counsel was questioned by the prosecutor:

Q [the State]: The defense lawyer asked you why you didn't ask for a mistrial after this [appellant's guilty plea] happened, or after there was a severance granted. Why not?

A: I did not believe that the Defendant was prejudiced in any way.

. . . .

Q: What about the voir? Dire [sic] and counsel makes a point of saying that maybe you would have done a little differently in picking the jury, maybe have a different number of strikes. Would you have—do you feel that she was harmed or prejudiced by the jury that was picked, notwithstanding the final ultimate decision by the jury?

A: That would involve, basically, second-guessing what any jury would do,

11

and we didn't, obviously, have the benefit of knowing what was to take place.

Q: Did you and [co-defendant Espinoza's counsel] discuss the strikes or, I guess, talk to each other about it?

A: There was some discussion, and, previously, when I indicated the number of strikes, I was incorrect. It was six strikes.

Q: When y'all discussed the thing, do you feel like you-all both had a common interest of what jurors y'all would both want to eliminate?

A: For the most part.

Q: So would your voir dire have been substantially different if you'd known that she was gonna plead guilty ahead of time, notwithstanding the fact that you said it was geared toward punishment?

A: Other than the time that would have been spent addressing the issues at punishment.

With respect to appellant's claim that her counsel was ineffective in failing to move for a mistrial because she was deprived of the full number of peremptory strikes, we conclude the record does not support appellant's claim. Her trial counsel testified that his voir dire would not have been substantially different, except that he would have focused on punishment issues. We conclude appellant has failed to establish either prong of *Strickland*.

With regard to appellant's claim that trial counsel was ineffective in failing to move for a mistrial because she was "insurmountabl[y]" prejudiced by pleading guilty in front of the jury, we conclude the record does not support appellant's claim. Appellant does not explain how she suffered prejudice by pleading guilty in front of the jury and cites no authority in support of her claim. Her trial counsel testified that he did not move for a mistrial because he did not believe she had suffered any prejudice. We conclude appellant

has failed to establish that her trial counsel rendered ineffective assistance by failing to move for a mistrial after the severance. We overrule appellant's first issue.

## Voluntariness of Plea

By her second issue, appellant contends she did not knowingly and voluntarily plead guilty because she acted on her trial counsel's misrepresentation that she would receive probation or a lesser sentence if she pleaded guilty. Appellant also complains that her trial counsel failed to inform her that she could choose between having the judge or jury determine her guilt, and failed to keep her informed about the case. She also asserts that she was so dissatisfied with her trial counsel's services that she hired another lawyer, but the trial court refused to permit the new counsel to assume her representation. According to appellant, "[t]he record shows a reasonable probability that but for the errors committed by trial counsel, [she] would not have plead guilty."

Before accepting a plea of guilty or no contest, article 26.13 of the Texas Code of Criminal Procedure requires a trial court to admonish the defendant as to the range of punishment, as well as to other consequences of his plea.[40] The admonishments may be made either orally or in writing.[41] If the admonishments are made in writing, the defendant and his attorney must sign a statement that the defendant understood the admonitions and was aware of the consequences of the guilty plea.[42] Substantial compliance by the court

---

[40] *See* TEX. CODE CRIM. PROC. ANN. art. 26.13(a) (Vernon Supp. 2007); *Pena v. State*, 132 S.W.3d 663, 665 (Tex. App.–Corpus Christi 2004, no pet.).

[41] *See* TEX. CODE CRIM. PROC. ANN. art. 26.13(d) (Vernon Supp. 2007); *Pena*, 132 S.W.3d at 665.

[42] *See* TEX. CODE CRIM. PROC. ANN. art. 26.13(d) (Vernon Supp. 2007); *Pena*, 132 S.W.3d at 665.

13

in making the admonishments is sufficient, unless the defendant affirmatively shows that

he was unaware of the consequences of his plea and that he was misled or harmed by the

court's admonishment.[43]  In cases where the trial court fails to admonish, a reviewing court

must "independently examine the record for indications that a defendant was or was not

aware of the consequences of his plea and whether he was misled or harmed by the trial

court's failure to admonish him of the punishment range."[44]

If the record establishes that the trial court properly admonished the defendant

about the consequences of his plea, there is a prima facie showing that the guilty plea was

entered knowingly and voluntarily.[45]  The burden then shifts to the defendant to show that

he pleaded guilty without understanding the consequences of his plea and, consequently,

suffered harm.[46]  In determining the voluntariness of a plea, we consider the totality of the

circumstances, viewed in light of the entire record.[47]  Once a defendant has pleaded guilty

and attested to the voluntary nature of his plea, he bears a heavy burden at a subsequent

hearing to demonstrate a lack of voluntariness.[48]  A plea is not rendered involuntary simply

---

[43] *See* TEX. CODE CRIM. PROC. ANN. art. 26.13(c) (Vernon Supp. 2007).

[44] *Burnett v. State*, 88 S.W.3d 633, 638 (Tex. Crim. App. 2002).

[45] *Pena*, 132 S.W.3d at 666 (citing *Martinez v. State*, 981 S.W.2d 195, 197 (Tex. Crim. App. 1998); *Ex parte Gibauitch*, 688 S.W.2d 868, 871 (Tex. Crim. App. 1985); *Dorsey v. State*, 55 S.W.3d 227, 235 (Tex. App.–Corpus Christi 2001, no pet.)).

[46] *Id.*

[47] *Id.*

[48] *Id.*

because a defendant received a greater punishment than he anticipated.[49]

When a defendant challenges the voluntariness of a plea entered upon the advice of counsel, contending that his counsel was ineffective, the voluntariness of the plea depends on (1) whether counsel's advice was within the range of competence demanded of attorneys in criminal cases and if not, (2) whether there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.[50] As with other types of ineffective assistance of counsel claims, appellant has the burden to show, by a preponderance of the evidence, that counsel's performance fell below a reasonable standard of competence, and that appellant would, with a reasonable probability, have pleaded not guilty and insisted on going to trial had he been properly advised.[51] In evaluating the effectiveness of counsel under the first prong, we look to the totality of the representation and the particular circumstances of each case.[52] Any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness.[53] There is a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance.[54] Appellant bears the burden of proving by a preponderance of the evidence that counsel

---

[49] *Hinkle v. State*, 934 S.W.2d 146, 149 (Tex. App.–San Antonio 1996, pet. ref'd); *Tovar-Torres v. State*, 860 S.W.2d 176, 178 (Tex. App.–Dallas 1993, no pet.).

[50] *Ex parte Moody*, 991 S.W.2d 856, 857-58 (Tex. Crim. App. 1999).

[51] *Id.* at 858.

[52] *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).

[53] *Id.*

[54] *Id.*

was ineffective.[55]

Waiver of all non-jurisdictional defects that occurred before a guilty plea that was entered without the benefit of an agreed sentencing recommendation, other than the voluntariness of the plea, occurs when the judgment of guilt was rendered independent of, and is not supported by, the claimed error.[56] A claim of ineffective assistance may or may not have a direct nexus with a defendant's guilt or innocence.[57] A judgment of guilt is not rendered independent of, and is not supported by, a claim of ineffective assistance when there is no evidence that the defendant would have pleaded not guilty had it not been for his counsel's alleged ineffectiveness.[58]

At the motion for new trial hearing, appellant testified as follows:

Q [Appellant's appellate counsel]: Tell us about—tell us the circumstances about that. After the jury was picked in this case, you decided you wanted to plead guilty, or how—explain how that happened.

A [Appellant]: I pleaded guilty for the purpose of [trial counsel] told me that if I were to plead guilty, I would get a lesser sentence and/or probation.

Q: Now, when did you have this conversation?

A: That same day that we came to trial.

Q: Now—and, originally, you said that you were not going to plead guilty?

A: Yes, ma'am.

---

[55] *Id.*

[56] *Martinez v. State*, 109 S.W.3d 800, 801 (Tex. App.–Corpus Christi 2003, pet. ref'd) (citing *Young v. State*, 8 S.W.3d 656, 666-67 (Tex. Crim. App. 2000) (en banc)).

[57] *Id.* at 803 (noting that guilty plea waives claim of ineffective assistance where no "direct nexus" between claimed ineffectiveness and the defendant's guilt or innocence).

[58] *Id.*

Q: Okay. And then, what happened? You changed your mind?

A: Yes, ma'am, because he told me—he told me that if I were to plead guilty, there was a better chance of me getting—well, he said I would get a lesser sentence.

On cross-examination, appellant testified that on the day she pleaded guilty, her trial counsel guaranteed that she would receive a lesser sentence or probation if she pleaded guilty. Appellant also testified as follows:

Q [Prosecutor]: What about when you did plead guilty, do you remember after you plead guilty and everybody was a little surprised in court?

A [Appellant]: Yes, sir.

Q: Do you remember Judge Longoria then sent the jury out into the jury room. Correct?

A: Yes, sir.

Q: Do you remember that the judge also had you read over your—go over the admonishments with you about whether you knew what you were doing, whether you were pleading guilty 'cause you were guilty, and if anybody forced you or threatened you to plead guilty. Do you remember Judge Longoria took the time—spent that time with you?

A: Yes, sir.

Q: And you went through all that with Judge Longoria. Correct?

A: Yes, sir.

Q: Did you change your mind at that point after the judge told you what your rights were?

A: No, sir, I didn't change my mind.

Q: Okay. You never asked the judge for any other option, did you?

A: No, sir.

Appellant also reviewed the written admonishments and confirmed her signature on the

documents:

> Q: Okay. So wouldn't it be fair to say, in retrospect, what happened was, you took most people by surprise, including your attorney, by pleading guilty at the last minute, yet, the judge did take the precautions of sending the jury out and going over your rights again. Correct?
>
> A: Yes, sir, that is correct.
>
> Q: And the judge did that orally. Correct?
>
> A: Yes, sir.
>
> Q: And he also had you do the thing in writing. Right?
>
> A: Yes, sir.

Appellant's trial counsel also testified regarding the circumstances surrounding appellant's guilty plea:

> Q [Prosecutor]: My question is, did you discuss her options with her?
>
> A: Yes.
>
> Q: Did you tell her she had the right to pick who decided the punishment?
>
> A: That's correct.
>
> Q: And what did she pick?
>
> A: The jury.
>
> Q: The Defendant testified that you told her you guaranteed that if she would plead guilty, that she would get a lesser sentence or get probation, that you guaranteed that to her. Did you do that?
>
> A: That is not correct.
>
> Q: What happened?
>
> A: Well, first of all, no attorney can guarantee the outcome, or, for that matter, the effect of one's election in terms of proceeding on a plea of guilty. That was one of the matters that was addressed in terms of her

18

consideration, but it was entirely her decision.

. . . .

Q: Is that right?  And, by the way, after she did plead guilty, isn't it true that the judge read her—did some admonishments to her orally?

A: That's correct, outside the presence of the jury.

Q: And isn't it true that the judge had you go over the written admonishments, also?

A: Yes.  And we had a chance to discuss that.

Q: So you went over both her written admonishments with her.  Correct?

A: Correct.

Q: And she signed, and did she seem to understand what she was doing?

A: Yes.

Q: In addition to the written admonishments, the Judge admonished her, too?

A: That's correct.

Q: Did she ever indicate she wanted to change her mind and want to plead not guilty?

A: No.

The record does not support appellant's contention that she was induced to plead guilty by her counsel's alleged promise that she would receive a lesser sentence or probation.  Appellant's trial counsel denied that he guaranteed that if appellant pleaded guilty, she would receive a lesser sentence or probation.  Moreover, although appellant testified on direct examination that she "changed her mind" about pleading guilty because of her counsel's promise of a lesser sentence, she testified on cross-examination that she

did *not* change her mind after the judge explained the admonishments to her. We conclude that appellant failed to establish that but for her counsel's alleged promise of a lesser sentence or probation, she would not have pleaded guilty and would have insisted on going to trial.[59]

We conclude appellant has failed to meet her burden to demonstrate that her plea was not voluntary.[60] Appellant has also failed to show that her counsel's representation fell below an objective standard of reasonableness and that there is a reasonable probability that, but for her counsel's errors, she would have pleaded not guilty and insisted upon going to trial.[61] We overrule appellant's second issue.

### Renunciation of Criminal Objective

In her third issue, appellant complains that because appellant proved the affirmative defense of renunciation, her punishment should have been for a second-degree felony, instead of a first-degree felony.[62]

Renunciation is the only specific affirmative defense to criminal solicitation provided

---

[59] *See Ex parte Moody*, 991 S.W.2d at 857-58.

[60] *See Martinez*, 981 S.W.2d at 197.

[61] *See Pena*, 132 S.W.2d at 668-69; *Ex parte Moody*, 991 S.W.2d at 858. Insofar as appellant complains that her trial counsel was ineffective because he failed to keep her informed about her case and failed to withdraw from representing her, even though she allegedly "fired" him and hired a new attorney, we find appellant's claims to be without merit. Appellant's trial counsel testified that he met with appellant ten to fifteen times and had "numerous" conversations with the prosecutor about appellant's case. Trial counsel testified that he had an "agreement" with appellant's aunt to represent appellant. Although trial counsel conceded that at one point, another lawyer made an appearance on appellant's behalf, he stated that he believed he had a continuing obligation to "do [his] best in representing and defending [appellant]." We conclude that appellant failed to establish either that her counsel's performance fell below an objective standard of reasonableness or that his deficient performance prejudiced her defense. *See Thompson*, 9 S.W.3d at 812.

[62] *See* TEX. PENAL CODE ANN. § 15.04(d) (Vernon 2003) (noting that if there is finding of renunciation, punishment shall be one grade lower than that provided for the offense committed).

20

in the Texas Penal Code.[63]   Section 15.04(b) states that it is a defense to prosecution for criminal solicitation that "under circumstances manifesting a voluntary and complete renunciation of his criminal objective the actor countermanded his solicitation or withdrew from the conspiracy before commission of the object offense and took further affirmative action that prevented the commission of the object offense."[64]   Therefore, renunciation must be voluntary and complete, and it must either avoid commission or prevent commission of the offense.[65]

We find appellant's argument to be without merit.  "A plea of guilty to a felony before a jury admits the existence of all incriminating facts necessary to establish guilt."[66]  "In such cases[,] there are no defenses or defensive issues for the jury to pass upon."[67]

Moreover, appellant's argument fails under a renunciation defense.  We conclude there is no evidence that appellant countermanded her earlier solicitation.  Although appellant testified at the punishment phase that after meeting with Lubbock, she attempted to call Campos "to have the deal cut off," there is no evidence that she took affirmative action to prevent the murder-for-hire.  Campos testified that on the day after appellant met with Lubbock, she called Campos and told him "everything's set."  According to Campos, appellant did not say she wanted to call off the "hit."  He also testified that appellant knew

[63] *See id.* § 15.04(b).

[64] *Id.*; *see McGann v. State*, 30 S.W.3d 540, 547 (Tex. App.–Fort Worth 2000, pet. ref'd).

[65] *McGann*, 30 S.W.3d at 547.

[66] *Wilkerson v. State*, 736 S.W.2d 656, 659 (Tex. Crim. App. 1987); *Reyna v. State*, 434 S.W.2d 362, 364 (Tex. Crim. App. 1968); *Garza v. State*, 878 S.W.2d 213, 216 (Tex. App.–Corpus Christi 1994, pet. ref'd).

[67] *Reyna*, 434 S.W.2d at 365.

how to contact him at work, but she did not do so. Other than appellant's testimony that she attempted to call Campos to call off the murder-for-hire, there is no other evidence in the record from which the jury could have concluded that appellant took the necessary steps to renounce her criminal objective. We overrule appellant's third issue.

## Failure to Include Renunciation Defense in Jury Charge

In her fourth issue, appellant contends the jury charge was in error because it failed to include a question on renunciation. We disagree.

A trial court has no duty *sua sponte* to instruct a jury on unrequested defensive issues even if the issues are raised by the evidence.[68] Accordingly, a trial court does not err by failing to instruct on a defensive issue in the absence of a timely request or objection bringing the need for the defensive instruction to the attention of the court.[69] Here, appellant did not request a renunciation instruction. Therefore, this complaint is not preserved for our review, and there is no error. We overrule appellant's fourth issue.

## Failure to Include Entrapment Defense in Jury Charge

By her fifth issue, appellant contends that the evidence establishes that she was entrapped and that the jury charge should have included an entrapment question. Again, we note that appellant failed to request any question on entrapment, and the issue is

---

[68] *Posey v. State*, 966 S.W.2d 57, 61-62 (Tex. Crim. App. 1998); *see Bennett v. State*, 235 S.W.3d 241, 243 (Tex. Crim. App. 2007) (holding "[d]efensive instructions must be requested in order to be considered applicable law of the case requiring submission to the jury"); *Jaynes v. State*, 216 S.W.3d 839, 854-55 (Tex. App.–Corpus Christi 2006, no pet.).

[69] *Posey*, 966 S.W.2d at 62.

22

therefore waived.[70]  We overrule appellant's fifth issue.[71]

### Failure to Request Mistrial After Appellant Pleaded Guilty

In her sixth issue, appellant contends that "[a] mistrial was necessary" after appellant pleaded guilty.  Appellant complains that her plea packet, which was admitted without objection, contained witness statements, police reports, and other "evidence," which  was "irreparably damaging" to her and should not have been available to the jury.  Appellant also contends her counsel was ineffective in failing to request a mistrial.[72]

The State responds that "[appellant] appears to complain that it was error for the trial court to admonish her and receive her guilty plea in front of the jury, yet she cites no authority for this proposition."

We construe appellant's argument to be that because she pleaded guilty before a jury, it was not necessary for the State to introduce evidence showing her guilt, and that she was harmed by the introduction of evidence included in her plea packet.  We agree with the State that appellant cites no authority in support of this argument.  We have already determined that the trial court did not err in failing to *sua sponte* grant a mistrial after the severance.  We overrule appellant's sixth issue.

### Extraneous Offense Evidence

---

[70] *Posey*, 966 S.W.2d at 61-62.

[71] We note that appellant also asserts that "[d]efense counsel's failure to request [an entrapment question] rendered his assistance ineffective."  However, appellant did not provide argument or authority to support this claim of ineffective assistance.  Therefore, we conclude that the issue has been inadequately briefed, and we will not address it.  *See* TEX. R. APP. P. 38.1(h).

[72] Appellant provides no argument or authority in support of this claim of ineffective assistance.  Accordingly, we conclude the issue has been inadequately briefed, and we will not address it.  *See* TEX. R. APP. P. 38.1(h).

In her seventh issue, appellant complains that the trial court abused its discretion in permitting the State to introduce the "extraneous transaction evidence" of the "fake" drug deal. According to appellant, testimony concerning the drug transaction had nothing to do with the solicitation allegation and "could only serve to inflame the jury and prejudice them against this defendant." Appellant also complains that the State presented evidence of an old possession-of-cocaine offense, but the offense could not be proved because the State was not permitted to present the chemist. According to appellant, the trial court should have instructed the jury to disregard the evidence concerning this offense. We are unpersuaded by appellant's argument.

We review a trial court's evidentiary rulings under an abuse-of-discretion standard.[73] Absent an abuse of discretion, we do not disturb a trial judge's ruling on the admissibility of evidence.[74]

Extraneous offenses may be admissible as same transaction contextual evidence when "several crimes are intermixed, or blended with one another, or connected so that they form an indivisible criminal transaction."[75] This type of evidence results when an extraneous matter is so intertwined with the State's proof of the charged crime that avoiding reference to it would make the State's case difficult to understand or incomplete.[76] Under such circumstances, "the jury is entitled to know all relevant surrounding facts and

---

[73] *State v. Mechler*, 153 S.W.3d 435, 439 (Tex. Crim. App. 2005).

[74] *See Prible v. State*, 175 S.W.3d 724, 731 (Tex. Crim. App. 2005); *Wyatt v. State*, 23 S.W.3d 18, 27 (Tex. Crim. App. 2002).

[75] *Prible*, 175 S.W.3d at 731-32 (quoting *Rogers v. State*, 853 S.W.2d 29, 33 (Tex. Crim. App. 1993)).

[76] *Id.* at 732.

circumstances of the charged offense; an offense is not tried in a vacuum."[77] Thus, same transaction contextual evidence illuminates the nature of the crime alleged by imparting to the trier of fact information essential to understanding the context and circumstances of events.[78] A limiting instruction is not required when evidence is admitted as same transaction contextual evidence.[79] Because same transaction contextual evidence is not offered as evidence against a defendant, but simply to explain the circumstances of the offense, a reasonable doubt instruction is not required.[80]

We conclude that evidence regarding the "fake" drug transaction was same-transaction contextual evidence which was necessary to the State's case to explain context.[81] We conclude the trial court's decision to admit the evidence concerning the drug

---

[77] *Moreno v. State*, 721 S.W.2d 295, 301 (Tex. Crim. App. 1986).

[78] *Lamb v. State*, 186 S.W.3d 136, 142 (Tex. App.–Houston [1st Dist.] 2005, no pet.).

[79] *Garza v. State*, 2 S.W.3d 331, 335 (Tex. App.–San Antonio 1999, pet. ref'd) (citing *Camacho v. State*, 864 S.W.2d 524, 535 (Tex. Crim. App. 1993)).

[80] *Id.*

[81] *See Prible*, 175 S.W.3d at 732. At the motion for new trial hearing, appellant's appellate counsel questioned her trial counsel regarding admission of the testimony concerning the drug deal:

Q [appellate counsel]: Sure. And as I recall from reading a little bit of the record, I believe the prosecutor characterized it a as a fake drug deal. Right?

A [trial counsel]: It wasn't originally designed as a fake drug deal. It just turned out that way to the extent that you had undercover informants on both ends.

Q: Uh-huh.

A: In other words, that it could never have materialized.

Q: Because it could never have materialized, would this even be an extraneous offense that could have been proved to the jury to enhance punishment?

. . . .

transaction was within the zone of reasonable disagreement.[82]

With regard to appellant's complaint that the trial court erred in permitting testimony from three Fort Worth police officers regarding appellant's arrest for possession of cocaine in 2004, we conclude that nothing is preserved for our review. In order to preserve error for appellate review, an appellant must make a timely objection, state the grounds for the objection, and secure a ruling from the trial court.[83] Here, appellant's counsel objected "to the use of unadjudicated extraneous offenses" *after* the first Fort Worth police officer had testified about the arrest.[84] In addition, appellant testified, without objection, as to the same 2004 arrest for possession of cocaine. If a defendant objects to the admission of evidence,

---

Q: It would not then be an extraneous offense for punishment purposes because it can't be proved. Right?

A: I don't believe that that was the basis for the presentation of that evidence. It wasn't being submitted per se as an extraneous offense.

Q: So—okay. So you did not object to any of the testimony and evidence regarding this drug deal that was never gonna happen?

A: The court had addressed that very matter to the extent that it was the State's position that that was part of the evidence that would be presented in their case, because that's how this whole transaction originated; notwithstanding that the fact that part of the State's case was that the consideration that was to have been paid for this hit was to have included the profits generated from the transaction.

. . . .

Q: But, again, did you—did you make, you know, significant attempts in court to try to keep all that information out?

A: Yes. And the court ruled that that evidence was admissible.

[82] *See Prible*, 175 S.W.3d at 732.

[83] *See* TEX. R. APP. P. 33.1.

[84] Appellant's trial counsel told the trial court, "Judge, the purpose of this motion [objecting to the use of unadjudicated extraneous offenses in punishment] is not intended to address what the court has already heard. It's basically any additional extraneous offenses that will be presented, and I wasn't intending to apply that retroactively." The trial court responded, "All right. The court will allow the evidence based on the law."

26

but the same evidence is subsequently introduced from another source without objection, the defendant waives his earlier objection.[85] We overrule appellant's seventh issue.

## Ineffective Assistance

In her eighth issue, appellant contends she was deprived of effective assistance of counsel. She complains that counsel (1) failed to call two witnesses—Juliana Contreras and Amanda Martinez—at the punishment phase; (2) filed no pre-trial motions, and instead, relied on motions filed by her co-defendant; (3) participated very little in voir dire questioning; (4) failed in his attempt to re-call Ranger Garza, and failed to properly introduce appellant's application for protective order against Hernandez; (5) failed to pay attention during trial; and (6) permitted inadmissible hearsay to be admitted.

We conclude appellant has failed to show her counsel was ineffective based on any of the identified acts or omissions. With regard to each of these complaints, appellant has failed to explain how, but for her counsel's alleged errors, the result of the proceedings would have been different.[86] We overrule appellant's eighth issue.

## Erroneous Sentence

By her ninth issue, appellant complains that her fifty-year sentence is "unjust" and "erroneous as a matter of law" because she was not the "mastermind" behind the plan and it "was a sting from the very beginning." Appellant waived any complaint of disproportionate sentencing by failing to object on these grounds at trial.[87] We overrule

---

[85] *Massey v. State*, 933 S.W.2d 141, 149 (Tex. Crim. App. 1996).

[86] *See Thompson*, 9 S.W.3d at 812.

[87] *See Trevino v. State*, 174 S.W.3d 925, 927-28 (Tex. App.–Corpus Christi 2005, pet. ref'd) (noting that because the sentence imposed is within the punishment range and is not illegal, appellant waived

27

appellant's ninth issue.

## Denial of Motion for New Trial

By her tenth issue, appellant contends the trial court erred in failing to grant her a new trial "in the interest of justice" because of "the myriad errors that occurred in this case."

An appellate court reviews a trial court's denial of a motion for new trial under the "abuse of discretion" standard.[88] We do not substitute our judgment for that of the trial court, but rather we decide whether the trial court's decision was arbitrary or unreasonable.[89] We must view the evidence in the light most favorable to the trial court's ruling and presume that all reasonable factual findings that could have been made against the losing party were made against that losing party.[90] Thus, a trial court abuses its discretion in denying a motion for new trial only when no reasonable view of the record could support the trial court's ruling.[91] We must defer to any reasonable implied factual findings that the trial court might have made in denying a motion for new trial.[92]

Appellant argues that the trial court abused its discretion in failing to grant appellant a new trial because of the "myriad errors" "as discussed throughout this Brief." She makes no new argument and cites no additional authority in support of her claim that the was

---

complaint by failing to object). Here, appellant's sentence was within the punishment range and was not illegal. *See* TEX. PENAL CODE ANN. § 12.32 (Vernon 2003).

[88] *Charles v. State*, 146 S.W.3d 204, 208 (Tex. Crim. App. 2004).

[89] *Id.*

[90] *Id.*

[91] *Id.*

[92] *See id.* at 211.

28

entitled to a new trial "in the interest of justice."  We are unpersuaded by appellant's argument.  We overrule her tenth issue.

## Conclusion

We affirm the trial court's judgment.

_____
LINDA REYNA YAÑEZ,
Justice

Do not publish.  TEX. R. APP. P. 47.2(b).

Memorandum Opinion delivered and filed
this the 5th day of June, 2008.